UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALICE MIKELSEN, *et al.*,

    Plaintiffs,

    v.

AIR & LIQUID SYSTEMS CORPORATION, *et al.*,

    Defendants.

NO. C17-0700RSL

ORDER DENYING MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on "Defendant Warren Pumps, LLC's Motion for Summary Judgment." Dkt. # 87. Plaintiffs' decedent, Arthur Mikelsen, worked at the Puget Sound Naval Shipyard from approximately 1942 to 1980, except for two years during World War II when he enlisted in the Army. Although his job titles changed through the years, Mr. Mikelsen worked primarily inside the machine shop at the shipyard. During repair or overhaul of naval vessels, equipment that could be removed from the ship was taken to the machine shop for maintenance and repair. Plaintiffs allege that defendant Warren Pumps manufactured pumps that contained asbestos and that Mr. Mikelsen was exposed to its products - and the asbestos contained therein - while working in the machine shop. Mr. Mikelsen developed mesothelioma, an asbestos-related disease, and died in 2014. Plaintiffs assert that Warren Pumps is liable for

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 1

Mr. Mikelsen's death and the plaintiffs' injuries because it put into the stream of commerce products that were negligently designed, were not reasonably safe as manufactured, and were not reasonably safe for lack of warnings. Plaintiffs also assert that Warren Pumps is liable because it failed to reasonably inspect, test, warn, instruct, monitor, and/or recall the products.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and "citing to particular parts of materials in the record" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. The Court will "view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." Krechman v. County of Riverside, 723 F.3d 1104, 1109 (9th Cir. 2013). Summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. FreecycleSunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties[1] and taking the evidence in the light most favorable to plaintiffs, the Court finds as follows:

---

[1] This matter can be decided on the papers submitted. The parties' requests for oral argument are DENIED.
With the exception of the expert testimony regarding the work Mr. Mikelsen performed (see *infra* n. 4), defendants' motions to strike are DENIED.

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 2

**A. Choice of Law**

The parties dispute whether maritime or Washington law governs the causation analysis in this case.

> [A] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. [46 U.S.C. § 30101.] The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," [Sisson v. Ruby, 497 U.S. 358, 363 (1990)], to determine whether the incident has "a potentially disruptive impact on maritime commerce," [Id. at 364, n. 2]. Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity." [Id. at 365, 364, and n. 2].

Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995). The locality test requires an inquiry into the precise location in which the injuries were suffered and/or whether the injuries were caused by a vessel on navigable water. In this case, Mr. Mikelsen was exposed to asbestos-containing products both on-board ship during his apprenticeship and later in the machinist shop. In Conner v. Alfa Laval, Inc., 799 F. Supp.2d 455 (E.D. Pa. 2011), the district court considered similar circumstances. After noting that "asbestos-related disease has a long latency period and plaintiffs often rely on expert testimony that all non-trivial exposures to asbestos contribute to the disease process," it concluded "that the locality test is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters." Id. at 466. Plaintiffs do not challenge that conclusion.

With regards to the connection test, Warren Pumps has not shown a potentially disruptive

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 3

impact on maritime commerce. In making this determination, the Court considers whether the features of the incident, based on a mid-level description of the events, could hypothetically disrupt commercial shipping. Grubart, 513 U.S. at 538-39; Christensen v. Georgia-Pacific Corp., 279 F.3d 807, 815 n.31 (9th Cir. 2002). Case law suggests that, if the injury-causing events were described as "injury to workers on Navy ships on navigable waters allegedly caused by defective products or exposure to dangerous conditions," the claims would potentially have a disruptive impact on maritime commerce and trigger maritime jurisdiction. Cabasug v. Crane Co., 956 F. Supp.2d 1178, 1188 (D. Haw. 2013); Conner, 799 F. Supp.2d at 467-68. Here, however, Mr. Mikelsen worked predominantly inside a machine shop at the Puget Sound Naval Shipyard, not on Navy ships or on navigable waters. Taken in the light most favorable to plaintiffs, the evidence shows that Mr. Mikelsen was assigned as a machinist on vessels for only six months during his apprenticeship and that, once he was assigned to Shop 31, his work on board vessels was limited.[2] When assessing the general features of the incident for purposes of the first prong of the connection test, courts consider and describe plaintiff's dominant activities. See Cabasug, 956 F. Supp.2d at 1190 ("Cabasug was not a predominately land-based Navy worker and instead spent seventy-five percent of his time on ships in drydock."); Mack v. Gen. Elec. Co., 896 F. Supp.2d 333, 337-38 (E.D. Pa. 2012) ("[I]f the worker's exposure was primarily land-based, then, even if the claims could meet the locality test, they do not meet the connection tests and state law (rather than maritime law) applies."); Faddish v. Buffalo Pumps, 881 F. Supp.2d 1361,

---

[2] Mr. Mikelsen, when describing his work history and qualifications, mentions only his six month stint in Shop 38 working as an outside machinist on board vessels. Dkt. # 108-2 at 34 and 39. No other vessel work is described. In response to Warren Pump's First Set of Interrogatories, plaintiffs identified seven ships that Mr. Mikelsen - who was by then deceased - "recalled working aboard between 1946 and 1963." Dkt. # 88-1 at 2.

1367 (S.D. Fla. 2012) (same). Thus, in this case, the incident would more accurately be described as "injury to workers in a shipyard caused by defective products or exposure to dangerous conditions."[3] Defendant offers no theory or argument explaining how a workplace injury occurring on dry land and not on a vessel (whether in dry dock or on navigable waters) could potentially have a disruptive impact on maritime commerce. The record is not, therefore, "sufficient for maritime jurisdiction to attach; the exposure must pose 'more than a fanciful risk to commercial shipping' . . . , and here the potential impact on maritime commerce is simply too attenuated." Conner, 799 F. Supp.2d at 468-69 (quoting Grubart, 513 U.S. at 539). Washington law governs plaintiffs' claims.

**B. Evidence of Exposure**

Under Washington's traditional product liability law, plaintiffs are required to identify the product that caused the injury, as well as the manufacturer thereof, in order to establish liability. Braaten v. Saberhagen Holdings, 165 Wn.2d 373, 396 (2008). Mr. Mikelsen need not personally identify the manufacturers of the asbestos-containing products to which he was exposed, however. Given the long latency period of asbestos-related illnesses and the fact that workers who did not work directly with asbestos products may yet succumb to mesothelioma, plaintiffs in asbestos cases "may rely on the testimony of witnesses who identify manufacturers of asbestos products which were then present at [the] workplace." Lockwood v. AC&S, Inc., 109 Wn.2d 235, 246-47 (1987).

---

[3] Warren Pumps' reliance on the Ninth Circuit's "inclusive view" of what has the potential to impact maritime commerce is misplaced. The description of the general character of the activity giving rise to the claim must be accurate: only then does an expansive view of the potential impacts of that activity come into play.

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 5

Warren Pumps does not seriously dispute that at least some of the products it supplied to the Navy during the relevant time frame contained asbestos or that its pumps were maintained and repaired in Shop 31 where Mr. Mikelsen worked.[4] Rather, defendant argues that mere presence in the workplace is insufficient to create a jury issue regarding whether its products caused Mr. Mikelsen's mesothelioma. This issue is discussed below.

**C. Causation**

Plaintiffs have the burden of establishing that Warren Pumps' products were a proximate cause of Mr. Mikelsen's injuries. Id. at 247-48. The Washington Supreme Court has recognized the difficulty in determining whether plaintiff has sufficient evidence of causation - *i.e.*, evidence tending to show that a particular defendant's asbestos product actually caused plaintiff's injury - to warrant taking the question of liability to the jury and has set out a number of factors that should be considered. The factors include:

- evidence of the decedent's proximity to defendant's products when the exposure occurred;

- the expanse of the work site where the asbestos fibers were released;

- the length of time of exposure to asbestos dust from defendant's products;

- the types of asbestos products to which the decedent was exposed and how they were handled in order to evaluate the relative risks posed by defendant's products;

- medical causation evidence regarding how asbestos inhalation causes injury and plaintiff's particular disease; and

---

[4] The Court has not considered plaintiffs' expert testimony with regards to what work Mr. Mikelsen actually performed.

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 6

● evidence as to other possible causes of the decedent's particular disease process.
Id. at 248-49.

Defendant points out that plaintiffs have no evidence that Mr. Mikelsen ever worked directly on a Warren Pump during his thirty-five years as a machinist. This fact undoubtedly must be considered when evaluating whether plaintiffs have made a sufficient showing that Warren Pumps' products were a proximate cause of Mr. Mikelsen's mesothelioma. It is not the only consideration, however. Taken in the light most favorable to plaintiffs, the record shows that during the repair or overhaul of a Navy vessel, various types of equipment, including pumps, were removed from the vessel and taken to Shop 31 for testing, maintenance, and repair. Large vessels, such as the USS Midway, contained many pumps of various descriptions. Warren Pumps were common. While three manufacturers provided pumps for the USS Midway, Warren Pumps provided almost 100 of them. As of 1960, in the middle of Mr. Mikelsen's service, Warren Pumps was supplying a quarter of all pumps purchased by the Navy.[5] In the context of its government contractor argument, Warren Pumps asserts that the Navy's specifications required it to include asbestos in its products. Asbestos-containing gaskets were prevalent even in low-pressure systems because it was a quality gasket material that did not deteriorate quickly.

Once inside Shop 31, rotating equipment (a category that includes pumps) was taken to Bench 1, an area that could handle up to 50 pieces of equipment at one time. Machinists would use air hoses, wire brushes, scrapers, etc. to remove dust and asbestos insulation. If testing

---

[5] Mr. Wortman went out of his way during his deposition to make sure that counsel was aware that "Warren pumps were probably some of the most respected units of pumps that were found commonly on Navy ships. . . . They were well built and had high respect from the Navy and from the shipyard . . . ." Dkt. # 110-4 at 8.

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 7

showed that maintenance or repair were required, the old packing and gaskets, both of which often contained asbestos during the relevant time frame, would need to be removed and scraped clean, a process that created dust. Shop 31 was a large cavernous space, approximately 1200 feet by 450 feet, with few internal walls and no ventilation systems other than windows that were opened in the summer. The concentration of the dust in the air was not nearly so bad as it was when machinists worked inside ship compartments (as Mr. Mikelsen did for six months during his training), but because of the aerodynamic characteristics of asbestos fibers, the dust dispersed and floated through the entire shop area in amounts sufficient to cause asbestos-related disease. Studies in the workplace and in locations near factories have measured increased incidence of mesothelioma in people who, although they never worked directly with asbestos-containing products, were subject to indirect exposures at considerable distances.

Thus, the record shows that, even if there is no evidence that Mr. Mikelsen personally worked on a Warren Pumps product, a number of the factors identified by the Washington Supreme Court favor allowing the issue of causation to go to the jury. Warren Pumps provided a significant portion of the pumps that went through Shop 31, Mr. Mikelsen worked in the same space where the asbestos in defendant's products was exposed, the products were handled in such a way that they generated visible asbestos-containing dust, the work area, while large, was well within the dispersal range of asbestos fibers, Mr. Mikelsen was exposed to defendant's products for decades with no protective equipment, and the causal link between asbestos fibers and mesothelioma is well supported. Warren Pumps does not identify any other source of asbestos in the workplace or Mr. Mikelsen's private life that was a dominant contributor to his asbestos exposure, nor does it identify another possible cause of his mesothelioma. Rather,

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 8

Warren Pumps challenges plaintiffs' expert testimony regarding the concentration of airborne asbestos particles in a work place the size of Shop 31. Defendant is, of course, welcome to put on contrary evidence based on different studies, but it does not change the fact that a reasonable jury could conclude from the facts, taken in the light most favorable to plaintiffs, that there is a causal connection between Mr. Mikelsen's mesothelioma and Warren Pumps' products.[6]

**D. Government Contractor Immunity**

Warren Pumps argues that, as a supplier of military equipment, it is immune from liability for alleged defects in the design or manufacture of the equipment under the "government contractor" defense.

The government contractor defense is by now an established component of federal common law, but it was first recognized by the Supreme Court [thirty] years ago in Boyle v. United Techs. Corp., 487 U.S. 500 [] (1988). The defense is

---

[6] If federal maritime law were applied to this case, the result would not change. In McIndoe v. Huntington Ingalls Inc., 817 F.3d 1170, 1174 (9th Cir. 2016), the Ninth Circuit adopted a "substantial contributing factor" test for proving causation for a negligence claim under maritime law. The court followed Lindstrom v. A-C Prod. Liab. Trust, 424 F.3d 488, 492 (6th Cir. 2005), in which the Sixth Circuit required a showing that defendant's product "was a substantial factor in causing the injury" under both negligence and strict liability theories. The Sixth Circuit held that evidence that defendant's product was in the workplace, without more, gives rise to only a slight inference that plaintiff may have been exposed to the product and that such a hypothetical and presumably brief exposure cannot support a causal finding. Generic expert testimony that each of plaintiff's occupational exposures to asbestos was a substantial contributing factor to the development of mesothelioma was not a substitute for actual "evidence of substantial exposure for a substantial period of time." 424 F.3d at 492-93. Here, on the other hand, plaintiffs have done more than identify a manufacturer's product in the workplace and declare it to be a substantial contributing factor of Mr. Mikelsen's disease. Plaintiffs have provided evidence specific to Warren Pumps, including the type of products sold, the volume of product in the workplace, the way the asbestos-containing materials were handled, the workplace environment, Mr. Mikelsen's proximity to work that generated asbestos dust, dispersal rates, and the length of time Mr. Mikelsen worked around Warren Pumps. Plaintiffs have provided evidence of "a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural." 424 F.3d at 492 (citation omitted). No more is required to take the issue of causation to the jury, even under maritime law.

> intended to implement and protect the discretionary function exception of the
> Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(a), which was enacted after
> World War II. The defense allows a contractor-defendant to receive the benefits of
> sovereign immunity when a contractor complies with the specifications of a federal
> government contract. Boyle, 487 U.S. at 511–12 []. As the Court said in Boyle,
> "[i]t makes little sense to insulate the Government against financial liability for the
> judgment that ... equipment is necessary when the Government produces the
> equipment itself, but not when it contracts for the production." Id. at 512 [].

In re Hanford Nuclear Reservation Litig., 534 F.3d 986, 1000 (9th Cir. 2008). A private party claiming the benefits of the government's sovereign immunity must show that "(1) the United States set forth reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier provided the United States with adequate warnings of the dangers." Rodriguez v. Lockheed Martin Corp., 627 F.3d 1259, 1266 (9th Cir. 2010) (internal quotation marks omitted). The general theory is that where the government hires a company to produce a piece of equipment and specifies the manner in which that task is to be performed, the company is entitled to the same immunity from liability the government would enjoy because it was acting as an arm of the government, without independent discretion. Bixby v. KBR, Inc., 748 F. Supp.2d 1224, 1242 (D. Or. 2010).

Warren Pumps asserts that "the Navy itself actually developed" the specifications to which its pumps were manufactured and "made the considered military decision to use asbestos in association with . . . the equipment it required for use" on its vessels, citing *en masse* to twenty-five pages of its expert's report. Dkt. # 87 at 12. Neither Warren Pumps nor its expert, Rear Admiral David P. Sargent, Jr. (Ret.), identify a directive from the sovereign requiring Warren Pumps to include asbestos in its packing, gaskets, and/or insulation lagging. Rear

Admiral Sargent asserts that "military specifications for gasket and packing for centrifugal pumps required the use of asbestos-containing materials." Dkt. # 88-6 at 13. Because this fact requires no technical or scientific expertise, the admissibility of this evidence is unclear.[7] Either the military specified the use of asbestos-containing materials in Warren Pump's products or it did not. Warren Pumps, which bears the burden of proof on this issue, has not provided any regulation, contract, or other specification that limited its discretion to choose a suitable material when manufacturing the pumps sold to the Navy. Assuming, for purposes of this motion, that expert testimony is admissible on this issue, the complete lack of any documentation of the hypothesized specifications casts doubt on Rear Admiral Sargent's unsupported opinion. In these circumstances, the existence of "reasonably precise specifications" cannot be proven as a matter of law by the *ipse dixit* of an expert, and Warren Pumps is not entitled to summary judgment on the government contractor defense.

With regards to plaintiffs' failure to warn claims, Warren Pumps argues that the sovereign retained and exercised its discretion with regards to equipment labels and warnings such that Warren Pumps cannot be held liable for any alleged failure to warn. Warren Pumps has the burden of showing that "(1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; [and] (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government." Getz v. Boeing Co., 654 F.3d 852, 866 (9th Cir. 2011). In Getz, the Ninth Circuit determined that the government exercises discretion over the warnings to be given when it goes beyond merely approving warnings proposed by the manufacturer and

---

[7] Defendant's assertion that this fact must be proven through expert testimony is rejected.

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 11

instead selects or chooses which warnings to give.

Rear Adm. Sargent opines that the Navy had detailed specifications regarding written materials provided with equipment that "included strict instructions regarding the labeling of and packaging of the components themselves, and for all technical documentation that was procured with them." Dkt. # 88-6 at 15. Again, no specifications, instructions, or regulations are identified. One could reasonably infer from the expert's lengthy discussion regarding the development of written materials and the remaining record that it was the manufacturers who developed the substance of the instructions and manuals, with the Navy providing approval. It appears that the Navy's purchase contracts required manufacturers to draft technical manuals to be delivered with the equipment. While there were incredibly specific requirements regarding the formatting, topics to be addressed, and writing style of these manuals (see Dkt. # 108-3 at 121-27), the actual contents thereof, including any NOTES, CAUTIONS, and WARNINGS, were left to the manufacturer. The "manufacturer's instruction books," as they were called, were subject to review by the Navy, but there is no indication that the Navy exercised this prerogative with regards to the documentation - if any - provided by Warren Pumps. Once a technical manual was approved by the Navy, it was certified as final. At that point, the content was more or less fixed, and the manufacturer could not alter the manual - including the warnings within it - "without prior discussion and express approval by the Navy." Dkt. # 88-6 at 16. The fact that new warnings had to be approved by the Navy before they could be included in an updated technical manual does not mean that the Navy specified the warnings that were included. Defendant has not met its burden of showing, as a matter of law, that the Navy had reasonably precise specifications regarding warnings and labeling that precluded it from complying with its

state law duty to warn.

For all of the foregoing reasons, Warren Pumps' motion for summary judgment is DENIED.

Dated this 9th day of October, 2018.

_Robert S. Lasnik_
Robert S. Lasnik
United States District Judge

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT - 13